******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MAUREEN LISKO *v.* MICHAEL LISKO
(AC 36693)

Gruendel, Sheldon and West, Js.

*Argued March 9—officially released July 28, 2015*

(Appeal from Superior Court, judicial district of New Haven, Hon. John C. Flanagan, judge trial referee [dissolution judgment]; Morgan, J. [child support arrearage motion].)

*Gerald H. Kahn*, for the appellant (defendant).

*Maureen Lisko*, self-represented, the appellee (plaintiff).

*Opinion*

SHELDON, J. This appeal arises from a postdissolution order regarding child support for the parties' minor child. The defendant, Michael Lisko, appeals from the judgment of the trial court ordering him to pay the sum of $4246 to the plaintiff, Maureen Lisko, as the arrearage due to her on his child support obligation. On appeal, the defendant claims that the trial court erred in failing to reduce the amount of the arrearage by the amount of dependency benefits paid directly to the plaintiff, as custodian of and representative payee for the child, by the Social Security Administration, as additional support for the child in light of the awarding of Social Security disability benefits to the defendant. The court instead determined that the defendant had obligated himself to pay the entire arrearage to the plaintiff based upon the parties' prior agreement, which had been adopted as an order of the court. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The marriage of the parties was dissolved on April 10, 2007. Pursuant to the judgment of dissolution, the parties had joint legal custody of their minor children, the primary residence of the children was with the plaintiff, and the defendant was to pay child support in the amount of $121 per week. On August 13, 2009, on the defendant's first motion to modify, the child support order was reduced by court order to $70 per week. On October 29, 2009, on the defendant's second motion to modify, the parties entered into an agreement regarding the payment of child support, which became an order of the court. Pursuant to that agreement, the defendant's child support payments were adjusted to permit him to pay only half of his $70 weekly child support obligation on an ongoing basis to the plaintiff, while the remaining half accrued as an arrearage, on condition that the accumulating arrearage was to be paid in full upon the first of two events to occur: the defendant obtaining full-time employment or his receipt of retroactive Social Security disability benefits. The defendant never obtained full-time employment, but sometime in 2013, his application for Social Security disability benefits was approved, whereupon the Social Security Administration issued lump sum retroactive benefit checks, both to the defendant, as the qualified claimant, and to the plaintiff, as the representative payee for the parties' son.[1]

On November 14, 2013, the parties returned to court on the defendant's motion to determine the arrearage that he owed to the plaintiff for past due child support that had accrued since October 29, 2009. The parties agreed, inter alia, that the total amount of the arrearage was $4246, but they could not resolve their dispute as to whether the dependency benefits paid directly to the plaintiff on behalf of the parties' son should be credited

to the defendant to reduce the amount he owed to the plaintiff. The court heard argument on that issue and the parties filed postargument briefs in support of their respective positions.

On February 14, 2014, the court issued a memorandum of decision, in which it concluded that, although our precedent allows for the reduction of arrearages for child support based upon direct payments of dependency benefits to or on behalf of minor children, the defendant in this case had entered into an agreement under which he agreed to pay his entire child support arrearage from his own funds. The court thus determined that the defendant's arrearage had not been satisfied by the payment of dependency benefits to the plaintiff by the Social Security Administration, and ordered the defendant to pay the entire arrearage from his own funds in accordance with the parties' November 14, 2013 agreement. This appeal followed.

The defendant claims that the trial court erred in determining that the payment of dependency benefits by the Social Security Administration to the plaintiff on behalf of the parties' minor child did not satisfy the child support arrearage that he owed to the plaintiff. The defendant contends that the law mandates that social security dependency benefits be credited against child support obligations. Our Supreme Court has explained: "The characterization of dependency benefits as a substitute for the disabled party's lost income has been identified as the basis for allowing a credit to the noncustodial parent toward his or her child support obligation. The majority view . . . regards social security benefits [paid to dependent children] as earnings of the contributing parent and, for this reason, allows benefits paid to a child on the parent's behalf to be credited toward child support obligations." (Internal quotation marks omitted.) *Jenkins* v. *Jenkins*, 243 Conn. 584, 592, 704 A.2d 231 (2004).

Although *Jenkins* and other authority cited by the defendant permit an offset or adjustment to a party's child support obligation based upon dependency benefits paid directly to the minor child, neither those cases, nor any other authority of which we are aware, state that such a credit is in fact required.[2] The trial court acknowledged the precedent allowing for such an offset, but, nevertheless found that the benefits received by the plaintiff on behalf of the parties' minor child should not be credited toward the defendant's arrearage because the court's previous order, entered pursuant to an agreement between the parties, provided that the arrearage "would be paid to the plaintiff by *the defendant* once he received his disability benefits payment from the [Social Security Administration]." (Emphasis in original.)

The defendant's brief is devoid of any analysis as to the effect, if any, of the parties' October 29, 2009

agreement, upon which the trial court relied in rejecting his claim for a credit against the arrearage in the amount of the paid dependency benefits. The defendant argues instead that "[t]o distinguish between payments made by the defendant's own hand and payments made by the Social Security Administration from the defendant's Social Security account is to exalt form over substance and to ignore the purpose of the Social Security Act." We disagree.

"In domestic relations cases, [a] judgment rendered in accordance with . . . a stipulation of the parties is to be regarded and construed as a contract. . . . Accordingly, [o]ur resolution of the [plaintiff's] claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . .

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [I]n construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous. . . . To identify and to apply the appropriate standard of review, we must, therefore, initially determine whether the agreement . . . was unambiguous." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 151 Conn. App. 638, 640–41, 97 A.3d 1 (2014).

The parties' October 29, 2009 agreement provided, in relevant part, as follows: "*The* [*defendant*] will pay the accrued amount to the [plaintiff], in full, on the first to occur of the following: (a) the [defendant's] obtaining full-time employment, payment of accrued support to

be received within one month of the [defendant's] first paycheck, [or] (b) [*t*]*he* [*defendant*] receiving his check for retroactive Social Security disability benefits, payment of accrued support to be received within seven days of *the* [*defendant's*] receipt of such check." (Emphasis added.)

The plain language of the parties' agreement contemplated that if the defendant qualified for retroactive Social Security disability benefits, he would pay in full the accrued arrearage owed to the plaintiff within seven days of receiving his retroactive disability check. Pursuant to this agreement, and the court order into which it was incorporated, the defendant's obligation to pay his entire child support arrearage was to be triggered by his receipt of that check. The agreement makes no mention whatsoever of the plaintiff's receipt of dependency benefits, or of how, if at all, her receipt of such benefits would affect the amount of the defendant's required payment.[3] The absence of any reference to the dependency benefit, itself, reinforces the plain language of the agreement, which required the defendant to pay the arrearage in full within seven days of receiving his check.

To be sure, without the parties' agreement, the defendant may have been entitled, under our case law, to have the dependency benefits paid to the plaintiff credited to the amount of his child support arrearage. The parties' October 29, 2009 agreement, however, makes this case purely one of contractual interpretation, and thus we are bound to give effect to the plain and unambiguous language that the parties used in drafting that agreement. "[C]ourts do not unmake bargains unwisely made. Absent other infirmities, bargains moved on calculated considerations, and whether provident or improvident, are entitled nevertheless to sanctions of the law. . . . Although parties might prefer to have the court decide the plain effect of their contract contrary to the agreement, it is not within its power to make a new and different agreement; contracts voluntarily and fairly made should be held valid and enforced in the courts." (Emphasis omitted; internal quotation marks omitted.) *Tallmadge Bros.*, *Inc.* v. *Iroquois Gas Transmission System*, *L.P.*, 252 Conn. 479, 505–506, 746 A.2d 1277 (2000).

Both parties make arguments as to what they intended in entering into the October 29, 2009 agreement. As noted, however, simply advancing alternative interpretations of contractual language does not render that language ambiguous. Because the language of that agreement is unambiguous, we are constrained by its plain meaning. We thus agree with the trial court's determination that the defendant's arrearage owed to the plaintiff was not satisfied by the dependency benefit paid directly to the plaintiff by the Social Security Administration on behalf of the parties' minor child.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Social Security Administration also issued a retroactive dependency benefit to the parties' daughter, who had reached the age of majority in March, 2013. That payment is not at issue on appeal.

[2] We note that the defendant's current support order was reduced to zero at the November 14, 2013 hearing because he received an adjustment to his obligation by the amount that the minor child would be receiving as a dependency benefit. This order was entered pursuant to an agreement by the parties in accordance with the child support guidelines.

[3] We note that the defendant's disability benefit is not impacted by the payment by the Social Security Administration of a dependency benefit. He receives 100 percent of his share regardless of how many dependents he has. In other words, although the dependency benefit is derived from the defendant's entitlement to disability benefits, it is not actually coming from the defendant. The minor child's entitlement to the dependency benefit is separate and apart from the defendant's disability benefits. See 42 U.S.C. § 402 (d) (2).